# Matter of Jesus Gabriel NAVARRO GUADARRAMA, Respondent

*Decided June 11, 2019*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Where an alien has been convicted of violating a State drug statute that includes a controlled substance that is not on the Federal controlled substances schedules, he or she must establish a realistic probability that the State would actually apply the language of the statute to prosecute conduct involving that substance in order to avoid the immigration consequences of such a conviction. *Matter of Ferreira*, 26 I&N Dec. 415 (BIA 2014), reaffirmed.

FOR RESPONDENT: David Stoller, Orlando, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY: Maria T. Armas, Assistant Chief Counsel

BEFORE: Board Panel: MALPHRUS, MANN, and KELLY, Board Members.

MANN, Board Member:

In a decision dated August 2, 2018, an Immigration Judge determined that the respondent is removable under sections 212(a)(2)(A)(i)(II), (6)(A)(i), and (7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(2)(A)(i)(II), (6)(A)(i), and (7)(A)(i)(I) (2012), as an alien who was convicted of a controlled substance violation, is present in the United States without being admitted or paroled, and is not in possession of a valid entry document. Finding that the respondent is ineligible for a waiver of inadmissibility under section 212(h) of the Act, the Immigration Judge denied his application for adjustment of status and ordered him removed from the United States. The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico. In 2005 and 2010, he was convicted of possession of less than 20 grams of marijuana in violation of section 893.13(6)(b) of the Florida Statutes. On the basis of these two convictions, the Immigration Judge found that the respondent is inadmissible

under section 212(a)(2)(A)(i)(II) of the Act.[1]  Because the respondent was convicted of more than a "single offense of simple possession of 30 grams or less of marijuana," the Immigration Judge determined that he is ineligible for a section 212(h) waiver and, consequently, for adjustment of status.

## II. ANALYSIS

Under section 212(a)(2)(A)(i)(II) of the Act, an alien who has been convicted of a violation of a State law "relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))" is inadmissible.  The respondent argues that he is not inadmissible under that section because the definition of cannabis (commonly referred to as marijuana) under Florida law is broader than the Federal definition.

At the time of the respondent's convictions, marijuana, which was a schedule I controlled substance under 21 U.S.C. § 812 (2000), was defined as

> all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. *Such term does not include the mature stalks of such plant,* fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16) (2000) (emphasis added).[2]

Like the Federal statute, Florida once defined "cannabis" to exclude "the mature stalks of the plant." *Purifoy v. State*, 359 So. 2d 446, 447 (Fla. 1978) (quoting Fla. Stat. § 893.02(2) (1975)).  However, in 1978, the Florida Supreme Court quashed a conviction for possession of more than 5 grams of

---

[1]  The respondent had a third conviction for a marijuana possession that was subsequently vacated.  He was also convicted of contributing to the delinquency of a minor.  However, for purposes of this appeal, we need not decide whether that conviction is for a crime involving moral turpitude.

[2]  On December 20, 2018, the Federal definition of "marijuana" at 21 U.S.C. § 802(16) was amended by the Agricultural Improvement Act of 2018, Pub. L. No. 115-334, § 12619(a), 132 Stat. 4490, 5018.  The definition essentially remained the same, but the statute was divided into two parts: subsection (A), which defines marijuana, and subsection (B), which specifies what the term marijuana does not include.  In addition to the mature stalks and other parts of the plant that were previously excluded, § 802(16)(B) now also provides that that marijuana does not include a certain type of "hemp."  *Id.* § 10113, 132 Stat. at 4908 (to be codified at 7 U.S.C. § 1639o(1)).

marijuana where the defendant possessed "an aggregation of prohibited cannabis and non-prohibited 'mature (plant) stalks' weigh[ing] 7.05 grams." *Id.* In response, the Florida Legislature amended its laws to redefine the term "cannabis" in section 893.02(3) as

> *all parts of any plant of the genus Cannabis*, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin.

(Emphasis added.)[3]

The respondent has the burden to establish that he is not inadmissible. Section 240(c)(2)(A) of the Act, 8 U.S.C. § 1229a(c)(2)(A) (2012); 8 C.F.R. § 1240.8(c), (d) (2018). Arguing that Florida law defines cannabis more broadly than 21 U.S.C. § 802(16), the respondent asserts that the statutes are not a categorical match and, therefore, that he has not been convicted of a controlled substance violation within the meaning of section 212(a)(2)(A)(i)(II) of the Act. However, the fact that some incongruity exists between the Federal and Florida laws is not dispositive.

To show that a State statute prohibits conduct outside the generic definition of an offense in a Federal statute, an alien must establish that there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *see also Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). We have held that "even where a State statute on its face covers a . . . [controlled] substance not included in a Federal statute's generic definition, there must be a realistic probability that the State would prosecute conduct falling outside the generic crime in order to defeat a charge of removability." *Matter of Ferreira*, 26 I&N Dec. 415, 420–21 (BIA 2014). Thus, an alien can establish that he is not removable based on a conviction for a State drug offense if he can show that in either his own case or other cases, the State court actually applied the statute to an offense involving a substance that is not federally

---

[3]  The stated purpose of Florida's expansion of the definition of cannabis was to facilitate law enforcement's determination of the precise weight of a controlled substance by eliminating the time-consuming need for drug labs to separate the prohibited part of the cannabis plant from the stalks and stems, which are of no drug value to the user. Joint Legis. Mgmt. Comm., Fla. Leg., 1979 Summary of General Legislation, at 178–79, https://fall.law.fsu.edu/collection/FlSumGenLeg/FlSumGenLeg1979.pdf.    In addition to expanding the definition of cannabis, the legislature increased the misdemeanor/felony threshold for simple possession from 5 to 20 grams to make allowances for the possible weight of stalks and stems. Nothing in the Florida law suggests that there was any intent to criminalize forms of marijuana that are not also federally controlled.

controlled. *Id.* at 422 (citing *Duenas-Alvarez*, 549 U.S. at 193); *see also Matter of Mendoza Osorio*, 26 I&N Dec. 703, 706 n.2 (BIA 2016).

With respect to his own case, the respondent does not claim that his Florida possession convictions were for a substance that is outside the Federal definition of marijuana at 21 U.S.C. § 802(16). In fact, he admits that his convictions were based on pleas of guilty or nolo contendere to possession of marijuana and were in conjunction with convictions for possession of drug paraphernalia. There is no basis to believe that the substances he possessed were marijuana stalks, sterilized seeds, or other derivatives that are not federally controlled. Moreover, since separate stalks and stems are of no value to a drug user, it is unlikely that the respondent would possess such substances along with drug paraphernalia.

The respondent has also not presented any cases where a defendant was successfully prosecuted under Florida law for an offense that involved only a form of marijuana that was not prohibited by 21 U.S.C. § 802(16). We are also not aware of any, and the change in the Florida law makes such prosecutions even more unlikely. We are therefore unpersuaded that there is a realistic probability that Florida would prosecute a person under section 893.13(6)(b) for possession of less than 20 grams of a form of marijuana that is not federally controlled.

Notwithstanding the actual application of section 893.02(3) of the Florida Statutes, however, the respondent argues that the plain language of the statute itself establishes a realistic probability that the State would prosecute conduct that falls outside the Federal definition of marijuana. In support of this contention, the respondent relies on a decision of the United States Court of Appeals for the Eleventh Circuit, in whose jurisdiction this case arises. *Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066 (11th Cir. 2013). In that case, the court found that *Duenas-Alvarez* does not require a showing that the State would prosecute conduct falling outside the Federal definition of the crime "when the statutory language itself, rather than 'the application of legal imagination' to that language, creates the 'realistic probability' that a state would apply the statute to conduct beyond the generic definition." *Id.* at 1072 (quoting *Duenas-Alvarez*, 549 U.S. at 193).

The decision in *Ramos* predates the Supreme Court's ruling in *Moncrieffe*, where the Court stated that to successfully "defeat the categorical comparison" under the realistic probability test, a party "would have to demonstrate that the State *actually prosecutes the relevant offense*." *Moncrieffe*, 569 U.S. at 206 (emphasis added). Moreover, a majority of the Eleventh Circuit sitting en banc subsequently declined to follow *Ramos*'s understanding of the realistic probability doctrine. *United States v. Vail-Bailon*, 868 F.3d 1293, 1295 (11th Cir. 2017) (en banc), *cert. denied*, 138 S. Ct. 2620 (2018) (mem.).

In that case, the Eleventh Circuit considered whether the offense of felony battery under Florida law is a crime of violence under the United States Sentencing Guidelines. The defendant proffered several hypothetical scenarios, claiming that an offender could be prosecuted under the Florida statute for conduct involving only the minimal use of force in his effort to demonstrate that the statute "flunks the physical force test." *Id.* at 1305. However, a majority of the court found his argument to be "[c]ontrary to every Florida court that has considered the issue," noting that "the real-world examples of Florida felony battery [it was] aware of all involve conduct that clearly required the use of physical force." *Id.* at 1305–06.

The Eleventh Circuit relied on the realistic probability test in *Moncrieffe* and *Duenas-Alvarez* to reject the defendant's "farfetched hypotheticals." *Id.* at 1306. It found "no support in Florida law for the idea that [the statute] is designed to criminalize the conduct described" by the defendant, which involved only "highly improbable ways of inflicting severe physical injury on a victim." *Id.* at 1306–07. The court therefore concluded that there was no realistic probability of prosecution in the hypothetical scenarios posited by the defendant, which it said "reflect little more than the verboten legal imagination proscribed" by the Supreme Court. *Id.* at 1307.

In support of his argument, the respondent cites to a dissenting opinion in the case. *Id.* at 1315 (Rosenbaum, J., dissenting). According to that opinion, "Florida felony battery does not satisfy the federal definition for a 'crime of violence,' despite what intuition might otherwise tell us." *Id.* at 1315. In this regard, the dissent asserted that "a petitioner does not engage in 'legal imagination' 'when the *statutory language itself* . . . creates the 'realistic probability' that a state would apply the statute' to the identified least culpable conduct,' regardless of whether it actually has done so." *Id.* at 1320 (quoting *Ramos*, 709 F.3d at 1071–72)). Thus, the dissent stated that where the language of the statute itself proscribes conduct outside the generic definition of the crime, the question "whether Florida has actually prosecuted such a case is entirely irrelevant to the analysis." *Id.* at 1320–21.

Subsequent to its decision in *Vail-Bailon*, the Eleventh Circuit has consistently required that actual examples be identified to demonstrate that a statute falls outside the generic definition of the crime at issue. *See, e.g.*, *United States v. St. Hubert*, 909 F.3d 335, 350 (11th Cir. 2018); *Ovalles v. United States*, 905 F.3d 1300, 1305–06 (11th Cir. 2018) (per curiam), *petition for cert. filed* (U.S. March 12, 2019) (No. 18-8393); *Pierre v. U.S. Att'y Gen.*, 879 F.3d 1241, 1252 (11th Cir. 2018); *United States v. Morales-Alonso*, 878 F.3d 1311, 1319–20 (11th Cir. 2018). For example, in *Pierre*, 879 F.3d at 1252, the court squarely rejected the petitioner's argument that "the act of expelling urine on a child's jellyfish sting, in order to alleviate the pain, would violate the letter of the [Florida statute prohibiting

the battery of a child by causing him to come into contact with bodily fluids], but would not be base or vile and thus would not be a [crime involving moral turpitude]." Relying on the Supreme Court's realistic probability test, the court stated that "to show that a statute creates a crime outside the categorical definition, a party . . . must at least point to his own case or other cases in which the state courts *in fact did apply* the statute in the special (nongeneric) manner for which he argues." *Id.* (quoting *Duenas-Alvarez*, 549 U.S. at 193) (emphasis added). The court denied the petition for review, finding that the petitioner had "pointed to no instance in which the state of Florida has prosecuted a person under [the child battery statute] for urinating on a jellyfish sting, or indeed for any realistic conduct that would not qualify as a crime involving moral turpitude." *Id.*

The respondent's position on appeal is not wholly without legal support, however. In certain circumstances, some circuit courts have looked only to a State statute if they found that its language was plain and clearly reached conduct outside the generic definition. For example, in *Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017), the First Circuit concluded that because "the plain terms of the Rhode Island drug schedules" covered a drug that the Federal schedules did not, the statute was "simply too broad" for the alien's crime "to qualify as a predicate offense under the categorical approach, whether or not there is a realistic probability that the state actually will prosecute offenses involving that particular drug."[4] Similarly, in *Hylton v. Sessions*, 897 F.3d 57, 60–63 (2d Cir. 2018), the Second Circuit held, without applying the realistic probability test, that the sale of marijuana in the third degree under New York law was not an aggravated felony drug-trafficking offense because the State statute, on its face, explicitly included an offense that is punishable as a misdemeanor under Federal law.[5]

In an unpublished decision, the Ninth Circuit held that the definition of methamphetamine under California law is broader than the Federal definition because it includes geometric isomers, which are not in the Controlled Substances Act. *Lorenzo v. Whitaker*, 752 F. App'x 482, 485 (9th Cir. 2019)

---

[4] Despite this conclusion, the First Circuit ultimately dismissed the alien's petition for review, applying the modified categorical approach to find that his convictions were for crimes relating to the distribution of marijuana. Therefore, its discussion of the realistic probability analysis was not necessary to the result in the case.

[5] We consider the decision in *Hylton* to be limited to the specific issue addressed—whether the alien was convicted of a drug-trafficking aggravated felony. Despite its holding, the Second Circuit recognized that "[t]here are cases in which a separate realistic probability inquiry remains necessary because the elements of the state statute alone do not provide sufficient guidance on its application." *Hylton*, 897 F.3d at 64.

(mem.).[6]  The court concluded that the alien was not deportable "[b]ecause this mismatch between the federal and state statutes is apparent on the face of the statutes, such that no rational interpretation of either statute would reconcile the two."  *Id.*  It also rejected the Government's contention that "the facial overbreadth in California law is of no significance because geometric isomers of methamphetamine do not in fact exist," finding that the issue had not previously been raised.  *Id.*  However, the court did "not foreclose the government from presenting its new argument or new evidence in another case," noting that its decision "concludes only that the record in this case does not show that [geometric isomers of methamphetamine] do *not* exist." *Id.* at 485 & n.2.[7]

To the extent that these decisions can be read as being inconsistent with the application of the realistic probability test to the controlled substance statute we now address, they are not binding because this case arises in the Eleventh Circuit.  *Matter of Anselmo*, 20 I&N Dec. 25, 31 (BIA 1989) ("Where we disagree with a court's position on a given issue, we decline to follow it outside the court's circuit.").  Ultimately, the decisions of the Supreme Court and the Eleventh Circuit control and support our approach in this case.  The Court has broadly stated that there must be a realistic probability of a State applying a statute beyond the Federal definition for the State law "to fail the categorical inquiry," and that whether such a probability exists depends on if the State "actually" prosecutes the offense in a manner broader than the Federal law.[8]  *Moncrieffe*, 569 U.S. at 205–06.

---

[6]  The opinion in *Lorenzo* was originally published as a precedent decision.  *Lorenzo v. Sessions*, 902 F.3d 930 (9th Cir. 2018).  However, it was subsequently withdrawn in *Lorenzo v. Whitaker*, 913 F.3d 930 (9th Cir. 2019), which was filed concurrently with this unpublished memorandum disposition that was substituted on rehearing.

[7]  More recently, the Ninth Circuit addressed Oregon's third degree robbery statute and found that although it "theoretically could cover a consensual taking due to its incorporation of theft by deception," conviction was "unlikely."  *Lopez-Aguilar v. Barr*, 921 F.3d 898, 903–04 (9th Cir. 2019).  Contrary to the dissenting opinion, which stated that "[a]s long as the application of the statute's text in the nongeneric manner is not a logical impossibility, the relative likelihood of application to nongeneric conduct is immaterial," *id.* at 908 (Berzon, J., dissenting), the majority found there was "no realistic probability that Oregon would prosecute such conduct under the statute," *id.* at 904.  Since the alien had "not presented, and [the court was] unable to find, any Oregon case in which a defendant was prosecuted for conduct falling outside the generic definition of theft," the court concluded that the Oregon statute was not overbroad and the alien's crime qualified as a categorical theft offense.  *Id.*

[8]  Other circuits have also subsequently applied the realistic probability test broadly.  For example, the Fifth Circuit has found that although an Oklahoma statute was "facially overbroad under the categorical approach" because the State's drug schedule contained two controlled substances that were not on the Federal schedule, the court rejected the

Thus, according to *Moncrieffe*, the realistic probability test is required, even where a State statute is facially broader than its Federal counterpart.  *Id.* at 206 (employing that test in determining whether a State firearms statute that had no exception for antique firearms was applied more broadly than the Federal statute, which included such an exception).

For the reasons set forth above, we reaffirm our decision in *Matter of Ferreira*, 26 I&N Dec. at 421, which relied on the Supreme Court's rulings in *Duenas-Alvarez* and *Moncrieffe*.  Even if the language of a statute is plain, its application may still be altogether hypothetical and may not satisfy the requirements of *Moncrieffe* if the respondent cannot point to his own case or other cases where the statute has been applied in the manner that he advocates.  Accordingly, where an alien has been convicted of violating a State drug statute that includes a controlled substance that is not on the Federal controlled substances schedules, he or she must establish a realistic probability that the State would actually apply the language of the statute to prosecute conduct involving that substance in order to avoid the immigration consequences of such a conviction.  This approach to the realistic probability test should be applied in any circuit that does not have binding legal authority requiring a contrary interpretation.

As we emphasized in *Matter of Ferreira*, "the application of the realistic probability test is necessary to prevent the categorical approach from eliminating the immigration consequences for many State drug offenses."  *Id.*  The categorical approach itself already greatly restricts the immigration consequences for aliens convicted of serious and dangerous crimes and "has

---

alien's claim that his conviction for a drug-related offense did not render him deportable.  *Vazquez v. Sessions*, 885 F.3d 862, 872–74 (5th Cir.), *cert. denied*, 138 S. Ct. 2697 (2018) (mem.).  Relying on a case in which the Fifth Circuit was sitting en banc, the court stated that "the realistic probability test applies whenever the categorical approach is employed."  *Id.* at 866 (citing *United States v. Castillo-Rivera*, 853 F.3d 218 (5th Cir.) (en banc), *cert. denied*, 138 S. Ct. 501 (2017) (mem.)).  Thus, while acknowledging that the "application of the realistic probability test is largely unsettled," *id.* at 873, the court held that it must be applied, even where a State provides penalties for offenses involving substances that are not federally controlled.  *Id.* at 874.  It further noted that a person "must point to an actual state case applying a state statute in a nongeneric manner, even where the state statute may be plausibly interpreted as broader on its face."  *Id.* (quoting *Castillo-Rivera*, 853 F.3d at 224 n.4).  Because the alien "never suggested that the realistic probability test [was] satisfied," he "waived the only viable argument."  *Id.* at 874; *see also Morey v. Att'y Gen. of U.S.*, 722 F. App'x 239. 241–42 (3d Cir. 2018) (stating that because the alien "failed to identify a single instance of New York prosecuting someone for the sale of [a substance that was not on the Federal controlled substances schedules], such a prosecution is merely a 'theoretical possibility' and does not prevent [the State crime] from being considered a categorical match for the generic offense" (citing *Matter of Ferreira*, 26 I&N Dec. at 420–21)).

increasingly led to results that Congress could not have intended." *Mathis v. United States*, 136 S. Ct. 2223, 2268 (2016) (Alito, J., dissenting). Without the application of the realistic probability test, the categorical approach would sweep away the immigration consequences for many more offenses than it already does. *See generally Torres v. Lynch*, 136 S. Ct. 1619, 1628 (2016) (declining to construe the Act "so as to produce such 'haphazard'— indeed, upside-down—coverage"). Our approach is based on Supreme Court precedent and is eminently reasonable because it promotes fairness and consistency in the application of the immigration laws by ensuring that aliens in different States face the same consequences for drug-related convictions. *See Matter of Mohamed*, 27 I&N Dec. 92, 96 (BIA 2017) ("[W]hether or not a conviction exists for immigration purposes is a question of federal law and is not dependent on the vagaries of state law." (citation omitted)).

In this case, the respondent has two convictions for possession of less than 20 grams of marijuana in violation of section 893.13(6)(b) of the Florida Statutes. These convictions are for violations of a State law relating to a controlled substance, as defined in 21 U.S.C. § 802. It is theoretically possible that Florida might apply its statute to conduct that only involves forms of marijuana (such as stalks or sterilized seeds) that are not included in the Federal definition of marijuana at 21 U.S.C. § 802(16). However, the respondent has not established a realistic probability that the State of Florida would prosecute such conduct, and there is no indication that it has successfully done so. The actual examples of Florida's prosecution of possession of less than 20 grams of marijuana all appear to involve controlled substances contained in the Federal definition of marijuana.

## III. CONCLUSION

Although the Florida statute defining marijuana includes substances that are not in the Federal definition, the respondent has presented no cases that establish a realistic probability that the State would actually apply the statute to an offense involving a substance that was not federally controlled. We therefore conclude that he has been convicted of violating a State law relating to a controlled substance, as defined in 21 U.S.C. § 802, and is inadmissible under section 212(a)(2)(A)(i)(II) of the Act. Since he was convicted of more than one such crime, the respondent is ineligible for a waiver of inadmissibility under section 212(h) and is therefore unable to establish eligibility for adjustment of status. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.