[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 17-15441, 18-12267, 19-12856
Non-Argument Calendar

_____

Agency No. A018-796-466

NELSON ZALDIVAR ANZARDO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(November 5, 2020)

Before JILL PRYOR, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Nelson Zaldivar Anzardo, a native and citizen of Cuba, seeks review of three Board of Immigration Appeals (BIA) decisions from November 2017, May 2018, and June 2019, denying his motions to reopen his removal proceedings. Zaldivar asserts the BIA erred in declining to reopen his proceedings under statutory authority and in declining to reopen his proceedings *sua sponte*. Zaldivar raises numerous issues on appeal, which we address in turn. After review, we dismiss his petitions in part, and deny the petitions in part.

## I. DISCUSSION

### A. Jurisdiction[1]

#### 1. Sua Sponte Reopening

Zaldivar contends we may review the BIA's decision not to exercise its *sua sponte* authority and, thus, we may reach the question of whether *Lopez v. Gonzalez*, 549 U.S. 47 (2006)—under which he asserts his 2003 convictions for possession of MDMA, possession of cocaine, and possession of cannabis in violation of Florida Statutes §§ 893.03(1), 893.03(2), and 893.13(6) would no longer qualify as aggravated felonies—constitutes an "exceptional circumstance" justifying the BIA's exercise of its *sua sponte* authority to reopen.

---

[1] "We review subject matter jurisdiction *de novo*." *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221 (11th Cir. 2006) (quotations omitted). We must inquire into subject matter jurisdiction whenever it may be lacking. *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 956 (11th Cir. 2005).

The BIA has the authority to *sua sponte* reopen or reconsider removal proceedings at any time, including upon motion.  8 C.F.R. § 1003.2(a).  The Immigration Judge (IJ) and BIA have the discretion to deny a motion to reopen, even if the moving party has met its *prima facie* burden.  8 C.F.R. §§ 1003.2(a), 1003.23(b)(3).  The BIA may *sua sponte* reopen any case in which it has rendered a decision.  *Id.* § 1003.2(a).  The BIA only exercises its authority to *sua sponte* reopen removal proceedings in "exceptional situations."  *In re G–D–*, 22 I. & N. Dec. 1132, 1133-34 (BIA 1999).

There is no express statutory grant of authority to reopen cases *sua sponte*. *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008).  Rather, the authority derives from 8 U.S.C. § 1103(g)(2), which grants general authority to the Attorney General over immigration matters.  *Id.*  In *Lenis*, we concluded we lacked jurisdiction to review the BIA's decision not to exercise its *sua sponte* authority to reopen or reconsider a case under 8 C.F.R. § 1003.2(a) because the regulation did not provide any "meaningful standard against which to judge the agency's exercise of discretion."  *Id.* at 1292-94.  *Lenis* also suggested an IJ's decision denying *sua sponte* reopening would be unreviewable for the same reasons.  *See id.* at 1294 (citing persuasive authority stating the decision to reopen is within the IJ's discretion and that "the IJ is under no obligation to reopen a case" pursuant to his or her *sua sponte* authority).  We noted an appellate court might have jurisdiction

3

over constitutional claims related to the BIA's decision not to exercise its *sua sponte* authority, but we declined to address that question because the petitioner had not raised a constitutional claim. *Id.* at 1294 n.7. However, in *Butka*, we reaffirmed our holding in *Lenis* and stated the jurisdiction-preserving section of 8 U.S.C. § 1252(a)(2)(D), for questions of law or constitutional claims, "has no impact on our jurisdiction to review motions for *sua sponte* reopening." *Butka v. U.S. Att'y Gen.*, 827 F.3d 1278, 1286 n.7 (11th Cir. 2016). We reasoned § 1252(a)(2)(D) created an exception to the jurisdiction-stripping provisions contained only in the Immigration and Nationality Act (INA), whereas our jurisdiction over *sua sponte* reopening is limited instead by the Administrative Procedure Act. *Id.*

We lack jurisdiction to review Zaldivar's arguments regarding the BIA's *sua sponte* authority to reopen his case. *See Lenis*, 525 F.3d at 1292-94. While *Lenis* indicated this Court might maintain jurisdiction over constitutional claims relating to the decision not to reopen *sua sponte*, Zaldivar has not raised any specific constitutional claims that relate to the denial of *sua sponte* reopening. *Id.* at 1294 n.7. Instead, Zaldivar asserts the BIA erred in finding his case lacked "exceptional circumstances" because there was a significant development in the law, which he argues is "incontrovertible" evidence of an exceptional circumstance. He further argues his case is distinct from that in *Lenis* or *Butka*, because he is challenging

4

"the very concept that regulation-made authority, in which the executive branch creates power for itself and bars judicial review may withstand constitutional scrutiny." These arguments do not assert a constitutional challenge to the way in which the BIA made its decision, instead, they assert legal error in the BIA's analysis of "exceptional circumstances." His arguments do not speak to the BIA running afoul of his constitutional rights, instead, they challenge this Court's precedent holding that such decisions are unreviewable. Therefore, we lack jurisdiction to review the BIA's exercise of its *sua sponte* authority.

### 2. *Statutory Reopening*

Because Zaldivar was found removable under two grounds listed in the criminal alien bar, this Court is obligated to consider whether it has jurisdiction to review the challenges he raises to the BIA's denial of reopening under its statutory authority. 8 U.S.C. § 1252(a)(2)(C) (providing we lack jurisdiction to review any final order of removal against an alien who is removable by reason of having committed specified criminal offenses, including an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii); or a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)); *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 & n.17 (11th Cir. 2020) (*en banc*) (stating we must consider *sua sponte* whether we have subject matter jurisdiction over a petition for review). Notwithstanding the criminal alien

5

bar, we have jurisdiction to review any constitutional claims or questions of law presented in a petition for review.  8 U.S.C. § 1252(a)(2)(D).

We have jurisdiction to review Zaldivar's challenges to the BIA's denial of his motions to reopen under statutory authority.  First, Zaldivar's motions to reopen challenged both his criminal grounds of removability, and thus, this Court may review the denial of those motions to determine whether the statutory conditions for limiting judicial review exist.  *See Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1283 (11th Cir. 2009) (explaining when the criminal alien bar is implicated, we retain jurisdiction to determine whether the statutory conditions for limiting judicial review exist; that is, we may determine whether a petitioner is "(1) an alien (2) who is removable (3) based on having committed a disqualifying offense." (quotations omitted)).  Second, this Court has jurisdiction to review questions of law, including the application of undisputed facts to a legal standard, and the issues Zaldivar raises on appeal—equitable tolling, whether his convictions qualified as controlled substance offenses, and the legal effect of his defective notice to appear—all concern questions of law.  8 U.S.C. § 1252(a)(2)(D); *see Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067-68 (2020) (holding the "questions of law" exception to the criminal alien bar includes issues involving the application of undisputed or established facts to a legal standard, such as whether a petitioner had shown sufficient due diligence to equitably toll the deadline for

6

filing a motion to reopen). Consequently, the criminal alien bar does not prevent this Court from considering Zaldivar's claims on appeal.

## B. Zaldivar's Controlled Substance Offenses

Zaldivar asserts that, in its 2019 order, the BIA erred in rejecting his argument that his 2003 convictions cannot constitute controlled substance offenses under *Mathis v. United States*, 136 S. Ct. 2243 (2016) and *Moncrieffe v. Holder*, 569 U.S. 184 (2013) because the Florida statutes did not require the state to prove the defendant knowingly possessed any illicit substance and presumed culpable *mens rea*.

### 1. Reasoned Consideration

The BIA must give reasoned consideration to an alien's claims and make adequate findings to permit our review. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019). A remand for lack of reasoned consideration is not a disagreement with the BIA's legal conclusions or factual findings, but a determination "that, given the facts and claims in the specific case before the [agency], the agency decision is so fundamentally incomplete that a review of legal and factual determinations would be quixotic." *Id.* (emphasis and quotations omitted). Reasoned consideration requires only that the BIA heard and thought about the case, rather than "merely react[ing]." *Id.* A failure of reasoned consideration results when the BIA decision, "read alongside the evidentiary

record, forces us to doubt whether we and the [BIA] are, in substance, looking at the same case." *Id.* at 1334.

The BIA failed to give reasoned consideration to Zaldivar's claim. *See Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018) (stating we review claims of legal error, including claims the BIA did not provide reasoned consideration in its decision, *de novo*). Zaldivar argued to the BIA that he was not removable for having been convicted of a controlled substance offense because his offense lacked a *mens rea* element as to the illicit nature of the substances he possessed. The BIA rejected this argument by stating he remained removable under *Matter of Navarro Guadarrama*, 27 I. & N. Dec. 560 (BIA 2019). But, although *Navarro Guadarrama* addressed whether a conviction under Fla. Stat. § 893.13(6) is a controlled substance offense, it rejected a completely different argument for why such a conviction did not qualify; it had nothing whatsoever to do with the lack of a *mens rea* element as to the illicit nature of the substance possessed, or, indeed, any lacking element. *See* 27 I. & N. Dec. at 560-63, 567-68 (dismissing an appeal considering whether a conviction for possession of less than 20 grams of marijuana under Fla. Stat. § 893.13(6)(b) was a controlled substance offense, finding although the state's definition might be more broadly written, the alien had not demonstrated there was a realistic probability the state would actually prosecute conduct involving a substance that was not federally controlled).

8

Accordingly, the BIA's exclusive reliance on *Navarro Guadarrama* to reject Zaldivar's challenge shows a lack of reasoned consideration, because the BIA's decision is not reasonably responsive to the argument made to it, and reveals instead that the BIA "merely reacted" rather than "heard and thought." *See Ali*, 931 F.3d at 1333-34. We need not remand for the BIA to consider Zaldivar's argument anew, however, because as explained below, this issue falls within one of the "rare circumstances" where no additional explanation, investigation, or findings by the agency would be necessary or helpful. *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1329-31 (11th Cir. 2007).

### 2. *Whether the Convictions Qualify*

When the BIA has failed to address a particular issue "put before it, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* at 1329 (quoting *INS v. Ventura*, 527 U.S. 12, 16 (2002)). In *Calle*, we determined that such a rare circumstance was present, such that remand was unnecessary, because the undecided issue was a legal issue with undisputed facts, a procedural one, and not one upon which the BIA could bring its expertise to bear and make an initial determination that would aid us in our later determination of whether the BIA had exceeded its leeway under the law. *Id.* at 1330-31 (declining to remand for BIA to consider petitioner's motion to reconsider, which the BIA wrongly denied as numerically barred,

9

because the motion merely reiterated prior arguments and presented irrelevant or cumulative evidence).

In relevant part, 8 U.S.C. § 1227(a)(2)(B)(i), provides an alien is deportable if, any time after his admission, he "has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in [21 U.S.C. § 802])." 8 U.S.C. § 1227(a)(2)(B)(i). Marijuana, cocaine, and MDMA are all controlled substances under § 802. *See* 21 U.S.C. § 802(6), 812. We have held a Florida conviction for cocaine possession under Fla. Stat. § 893.13(6)(a) is a conviction for a controlled substance offense under § 1227(a)(2)(B)(i), notwithstanding the fact Florida criminalizes possession of some substances that fall outside the federal definition of a controlled substance, because the Florida statute is divisible by the identity of the drug possessed, and cocaine is a federally controlled substance. *Guillen v. U.S. Att'y Gen.*, 910 F.3d 1174, 1176, 1179-84 (11th Cir. 2018).

Florida's statute defining a possession offense uses the general term "controlled substance." Fla. Stat. § 893.13(6)(a). At the time of Zaldivar's convictions, it read:

> It is unlawful for any person to be in actual or constructive possession of a controlled substance unless [authorized by medically-related exceptions or as otherwise authorized in the chapter].

10

*Id.* (2003). Marijuana, cocaine, and MDMA are all defined as controlled substances. *See id.* § 893.03(1)(c).

In 1996, the Florida Supreme Court held in *Chicone v. State*, that the offense of possession of a controlled substance under Fla. Stat. § 893.13(6)(a) included an element of *mens rea* as to the illicit nature of the substance the offender possessed. 684 So. 2d 736, 743-44 (Fla. 1996). In January 2002, in *Scott v. State*, the Florida Supreme Court held that regardless of the defense raised or the affirmative defenses asserted, a defendant in a controlled-substance possession case is entitled to an instruction on the element of guilty knowledge as to the illicit nature of the substance because it is an element of the crime, and the failure to give the instruction was not harmless error. 808 So. 2d 166, 169-71 (Fla. 2002). In response, the Florida legislature passed Fla. Stat. § 893.101, which states that *Chicone* and *Scott*'s holdings were contrary to its legislative intent, that knowledge of the illicit nature of a controlled substance is not an element of an offense under the chapter, and instead the lack of such knowledge was an affirmative defense. Fla. Stat. § 893.101. The statute became effective May 13, 2002. *Id.* Florida appellate courts have held that Fla. Stat. § 893.101 may not be applied retroactively to an offense occurring before May 13, 2002. *See Sandifer v. State*, 851 So. 2d 788, 790 (Fla. 4th DCA 2003); *see also, e.g., J.J.N. v. State*, 877 So. 2d

11

806, 809 n.2 (Fla. 5th DCA 2004); *State v. Odom*, 862 So. 2d 56, 58-59 (Fla. 2d DCA 2003); *Gordon v. State*, 858 So. 2d 359, 359-60 & n.1 (Fla. 1st DCA 2003).

Remand is unnecessary because the undisputed facts show that Zaldivar's offenses of conviction contained a *mens rea* element as to the illicit nature of the substances he possessed.  Zaldivar committed his drug-possession offenses on November 16, 2001, before the effective date of Fla. Stat. § 893.101, which removed the illicit-nature-of-substance *mens rea* element, and the statute does not apply retroactively.  Fla. Stat. § 893.101; *Sandifer*, 851 So. 2d at 790. Consequently, even if Zaldivar were correct that the lack of a *mens rea* element as to the illicit nature of the substance would make an offense not a controlled substance offense, his challenge would fail because his offenses had such an element.  Thus, we deny Zaldivar's petition as to this issue, notwithstanding the BIA's failure to afford his claim reasoned consideration.

## C.  *Equitable Tolling*

Zaldivar asserts the BIA erred in determining the time for filing his 2017 motion to reopen, based on the BIA's statutory authority, was not equitably tolled. Under the INA, subject to limited exceptions not relevant here, an alien may file only one statutory motion to reopen his removal proceedings, and he must file it within 90 days of the entry of his final order of removal.  8 U.S.C. § 1229a(c)(7)(A), (C).  The 90-day deadline may be equitably tolled, however.  *See*

*Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1362-65 (11th Cir. 2013) (en banc).  Equitable tolling of a filing deadline typically requires a showing that: (1) the litigant "has been pursuing his rights diligently," and (2) "some extraordinary circumstance stood in his way."  *Bing Quan Lin*, 881 F.3d at 872. We have agreed with the BIA's conclusion the defendant was not entitled to equitable tolling of the deadline to file a motion to reopen when the motion was filed three years after the case that allegedly made her no longer removable. *United States v. Watkins*, 880 F.3d 1221, 1226 n.2 (11th Cir. 2018).  We stated that waiting over three years to seek reopening "after the means to challenge that [removal] order became available does not demonstrate diligence," particularly in light of the petitioner's lack of explanation for the delay.  *Id.*

The BIA did not err in determining that Zaldivar failed to establish his entitlement to equitable tolling because he could not show he acted diligently or extraordinary circumstances beyond his control prevented him from filing his motion to reopen until 2016.  While Zaldivar was indisputably unable to file his motion to reopen within 90 days of his January 2004 removal order (because it was based on *Lopez*, which did not exist until December 2006), the question before the agency was whether the deadline should be equitably tolled until September 2016, when Zaldivar actually filed his motion.  Zaldivar argues his nearly 10-year delay in filing the motion after *Lopez* issued was reasonable—and therefore should not

13

prevent him from obtaining equitable tolling—because he did not know about *Lopez*, or have reason to research whether the grounds for reopening existed, until it appeared that removals to Cuba were likely to occur.

First, a showing that one had little need to pursue his rights diligently because of the enforceability of Cuban deportation orders is not an excusable reason for failing to pursue his rights diligently. Second, not having an imminent motivation for trying to challenge one's removal order is also not an "extraordinary circumstance" that is beyond one's control, that actually prevents one from filing, or that is as "compelling" as serious illness or the death of a family member. *See* 8 U.S.C. § 1229a(e)(1) (explaining "exceptional circumstances" include "battery or extreme cruelty" to the alien or a parent or child; serious illness of the alien or a spouse, child or parent; death of the alien's spouse, child, or parent; or other circumstances that are no less compelling and that are beyond the alien's control). Accordingly, the BIA did not err in finding that Zaldivar was not entitled to equitable tolling.

D.  *Defective Notice to Appear*

Zaldivar asserts that, under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), the BIA should have reopened and terminated his removal proceedings because the defective notice to appear (NTA) deprived the IJ of jurisdiction or, alternatively, prejudiced Zaldivar.

14

In *Pereira*, the Supreme Court held—in the context of when an alien's continuous physical presence for purposes of cancellation of removal ends—that an NTA that does not specify the time and place of the hearing does not comport with 8 U.S.C. § 1229(a) and consequently is not an NTA at all. *See Pereira*, 138 S. Ct. at 2110. For years, almost every NTA the government served omitted the time and date of the removal hearing, stating instead they were "to be determined." *Matter of Bermudez Cota*, 27 I. & N. Dec. 441, 444 (BIA 2018).

After *Pereira*, we considered whether an NTA that failed to state the time and date of the hearing deprived the agency of jurisdiction over the removal proceedings. *See Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148 (11th Cir. 2019). As an initial matter, we concluded we had jurisdiction to review Perez-Sanchez's *Pereira* claim, even though he did not raise it first before the BIA. *Id.* at 1153. We explained we "always have jurisdiction to determine our own jurisdiction," and because our jurisdiction to review removal proceedings extended only to final orders of removal, we necessarily had to determine whether there was a valid final order of removal granting us jurisdiction. *Id.* (quotations omitted). Thus, Perez-Sanchez's failure to exhaust the claim before the agency did not deprive us of jurisdiction. *Id.*

Turning next to the merits, we first determined the NTA was "unquestionably deficient" under 8 U.S.C. § 1229(a) for failing to specify the time

15

and date of the removal hearing. *Id*. We reasoned *Pereira* foreclosed any argument that a statutory defect in an NTA could be later cured by a subsequent notice of hearing including the time and date. *Id*. We stated "a notice of hearing sent later might be relevant to a harmlessness inquiry, but it does not render the original NTA non-deficient." *Id.* at 1154.

Nonetheless, in *Perez-Sanchez* we concluded the defective NTA did not deprive the agency of jurisdiction over the removal proceedings because the statutory "time-and-place requirement" did not "create a jurisdictional rule," but was instead a "claim-processing rule." *Id.* at 1150, 1154. Similarly, we also concluded that 8 C.F.R. § 1003.14 too, "despite its language, sets forth not a jurisdictional rule but a claim-processing one," reasoning "an agency cannot fashion a procedural rule to limit jurisdiction bestowed upon it by Congress." *Id.* at 1154-55. Having determined the agency properly exercised jurisdiction over Perez-Sanchez's removal proceedings, we denied his petition for review as to his *Pereira* claim. *Id.* at 1157. Finally, to the extent Perez-Sanchez claimed he was entitled to a remand because the NTA otherwise violated the agency's claim-processing rules, we dismissed the petition for lack of jurisdiction because the claim was unexhausted. *Id*.

To the extent Zaldivar argues the defective NTA in his case deprived the agency of jurisdiction, that claim fails. *Perez-Sanchez*, 935 F.3d at 1153-57.

16

Additionally, the BIA did not err in denying Zaldivar's *Pereira* claim because he failed to show any prejudice from the defective NTA. Zaldivar asserts he was prejudiced by his removal proceedings occurring when they did, that is, before *Lopez* showed him not to be removable as an aggravated felon. However, the appropriate prejudice inquiry is whether he was harmed *by the NTA's defect—i.e.,* the NTA stating his removal hearing would be at a date and time "to be set" rather than setting forth an actual date and time—not by his removal proceedings taking place when they did. Zaldivar has not raised any claim that he was harmed or prejudiced by the omission of the hearing information on the NTA. Because the prejudice argument he makes does not relate to the NTA's deficiency, and he did in fact appear at his hearing before the IJ, he has not shown any prejudice.

## II.  CONCLUSION

Accordingly, we dismiss Zaldivar's petitions to the extent they are based on the BIA's exercise of its *sua sponte* authority to reopen and deny his petition as to the remaining grounds.

**DISMISSED in part and DENIED in part.**