# Matter of Benjamin FELIX-FIGUEROA, Respondent

*Decided July 30, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An Immigration Judge must apply the realistic probability test whenever a party asserts that a State's statutory definition of a controlled substance is broader than the Federal definition of a controlled substance based on a textual mismatch regarding the isomers of a particular controlled substance.

(2) Once DHS establishes the existence of a State drug conviction by clear and convincing evidence, a respondent who argues that a State conviction is categorically overbroad based on differing substance or isomer definitions has the burden of demonstrating a realistic probability that the State prosecutes substances falling outside the Federal definition of a controlled substance.

FOR THE RESPONDENT: Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY: Megan A. McLean, Assistant Chief Counsel

BEFORE: Board Panel: MULLANE, HUNSUCKER, and GOODWIN, Appellate Immigration Judges.

GOODWIN, Appellate Immigration Judge:

This case was last before the Board on December 15, 2023, when we remanded the record to the Immigration Judge to further analyze whether the respondent's conviction for Possession of Dangerous Drugs for Sale under section 13-3407 of the Arizona Revised Statutes was a controlled substance violation. The Department of Homeland Security ("DHS") now appeals the Immigration Judge's November 27, 2024, decision terminating the respondent's removal proceedings. The appeal will be sustained and the record remanded.

## I. PROCEDURAL HISTORY

The respondent was convicted in 2017 of Possession of Dangerous Drugs for Sale, to wit, methamphetamine, under section 13-3407 of the Arizona Revised Statutes. DHS charged him with removability under section 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(B)(i) (2018), for having been convicted of a "violation

of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." The Immigration Judge terminated removal proceedings, concluding that the respondent was not removable as charged. DHS appealed, and on December 15, 2023, we remanded the record to the Immigration Judge for further factual findings and analysis.

On November 27, 2024, the Immigration Judge determined that the inclusion of positional isomers rendered Arizona's definition of methamphetamine "clearly and unambiguously overbroad" as compared to the Federal definition of a controlled substance. Thus, she concluded that the respondent need not satisfy the realistic probability test to defeat the charge of removability. In the alternative, the Immigration Judge determined that DHS bore the burden of disproving any realistic probability of prosecution and that its evidence showing that one of the positional isomers of methamphetamine—phentermine—was separately controlled under both Arizona and Federal law was insufficient to establish a categorical match between the two definitions of methamphetamine. Concluding that DHS did not satisfy its burden to establish the respondent's removability, the Immigration Judge again terminated removal proceedings.

## II.  ANALYSIS

In determining whether the respondent's conviction under section 13-3407 of the Arizona Revised Statutes is for a controlled substance offense, we employ the categorical approach to determine whether the respondent's conviction necessarily involved a substance listed under the Federal controlled substances schedules. *See Matter of P-B-B-*, 28 I&N Dec. 43, 45–46 (BIA 2020). The Board has previously concluded that section 13-3407 of the Arizona Revised Statutes is divisible as to the specific "dangerous drug" involved and therefore the modified categorical approach applies. *Id*. at 46–47. The respondent was convicted of possession of methamphetamine.

Arizona's statutory definition of a dangerous drug includes isomers of methamphetamine, "whether optical, positional, or geometric."[1]

---

[1]   The United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, has previously affirmed a lower court's determination based on unrebutted expert testimony that "geometric" isomers of methamphetamine do not exist. *See United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1151–52 (9th Cir. 2020). The parties agreed before the Immigration Judge, however, that positional isomers do exist.

Ariz. Rev. Stat. Ann. § 13-3401(6)(c)(xxxviii) (2017). In contrast, the Federal statutory definition of a controlled substance also includes isomers of methamphetamine, but the statutory text defines those isomers only as "optical" isomers. 21 U.S.C. §§ 802(14), 812(c), Schedule II(c), Schedule III(a)(3) (Supp. V 2017). Whether the respondent has been convicted of a controlled substance offense rendering him removable as charged is a legal question we review de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2025).

### A.     The Realistic Probability Test and Isomers

The Supreme Court of the United States has stated that "there [must] be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *See Moncrieffe v. Holder*, 569 U.S. 184, 206 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). The Supreme Court advised in *Moncrieffe* that the test articulated in *Duenas-Alvarez* applies even where there is apparent overbreadth between the Federal statute and its State counterpart. *See Moncrieffe*, 569 U.S. at 205–06. Relying on the realistic probability test, the Court in *Moncrieffe* rejected the argument that the categorical approach would frustrate the enforcement of an aggravated felony provision that refers to a Federal firearms statute because some States' firearm laws lack the "antique firearm" exception in the Federal firearms statute. *Id.* The Supreme Court noted that to satisfy the realistic probability test, "[an alien] would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms." *Id.* at 206. Circuit courts have subsequently applied the realistic probability test in instances where a State's definition of a firearm is textually overbroad as compared to the Federal definition. *See, e.g.*, *United States v. Aguilera-Rios*, 769 F.3d 626, 635 (9th Cir. 2014) (concluding that the realistic probability test was satisfied because California lacked an antique firearm exception and "California does prosecute cases involving antique firearms").

Relying on *Moncrieffe*, the Board has explained that "[e]ven if the language of a statute is plain, its application may still be altogether hypothetical and may not satisfy the requirement[] . . . [of demonstrating a realistic probability] if the respondent cannot point to his own case or other cases where the statute has been applied" to conduct falling outside the generic definition. *Matter of Navarro Guadarrama*, 27 I&N Dec. 560, 567 (BIA 2019). As such, in *Matter of Navarro Guadarrama*, 27 I&N Dec. at 567, the Board held:

> [W]here an alien has been convicted of violating a State drug statute that includes a controlled substance that is not on the Federal controlled substances schedules, he or she must establish a realistic probability that the State would actually apply the language of the statute to prosecute conduct involving that substance in order to avoid the immigration consequences of such a conviction.

The United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, has applied the realistic probability test in comparing isomer differences between State and Federal drug definitions, even when the State statute explicitly lists isomers not included in the Federal definition. *See United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1153–55 (9th Cir. 2020). The Ninth Circuit observed that the California definition of a controlled substance includes optical and geometric isomers of methamphetamine whereas the Federal definition only includes optical isomers. *See id.* at 1152. After explaining that the government had established "geometric" isomers of methamphetamine do not exist, the Ninth Circuit found "'no realistic probability' that . . . [the] California methamphetamine statute . . . w[ould] be used to prosecute someone in connection with geometric isomers of methamphetamine." *Id*. at 1154. Thus, despite the textual overbreadth, the Ninth Circuit found that the California and Federal drug definitions were a categorical match. *See id*. at 1154–55.

We recognize that the Ninth Circuit's decision relied on the factual impossibility of geometric isomers, distinguishing a Seventh Circuit case in which "the government had not presented evidence that the apparent overbreadth consisted entirely of impossible conduct." *Id*. at 1155. However, we are not persuaded that factual impossibility is a requisite for applying the realistic probability test to a State statute that on its face appears to be overbroad as compared to the generic Federal definition of an offense. *See, e.g.*, *Moncrieffe*, 569 U.S. at 205–06; *see also United States v. Turner*, 47 F.4th 509, 522 (7th Cir. 2022) (distinguishing factual impossibility from the realistic probability test and noting that the former "comes one step before" the latter).

A statute's textual overbreadth does not always unambiguously establish that there is a realistic probability that the State would apply the statute to conduct falling outside the Federal definition of an offense. *See, e.g.*, *United States v. Phifer*, 909 F.3d 372, 381–85 (11th Cir. 2018) (discussing the ambiguity of the term "positional isomer" within the Federal regulations). For example, the Sixth Circuit recently concluded that although Michigan law bans cocaine and its "stereoisomers" whereas the Federal controlled substances schedule includes "cocaine, . . . optical and geometric isomers,"

Michigan law did not cover more isomers of cocaine because the reference to "geometric isomers" in the Federal definition included the "stereoisomers" of cocaine controlled under Michigan law. *United States v. Wilkes*, 78 F.4th 272, 279–85 (6th Cir. 2023). Likewise, the Eleventh Circuit in *Chamu v. United States Attorney General*, 23 F.4th 1325, 1331–33 (11th Cir. 2022), concluded that the alien did not satisfy his burden of proving that Florida's statutory definition of cocaine, which includes cocaine's "stereoisomers," is overbroad as compared to the Federal definition, which includes only "optical isomers and geometric isomers."

Based on the foregoing, we conclude that an alien cannot establish that his or her conviction is not categorically for a controlled substance offense—and thereby eliminate the immigration consequences of the conviction—by simply pointing to a State controlled substance definition including a particular kind of isomer not included in the Federal definition. *See Matter of Navarro Guadarrama*, 27 I&N Dec. at 567. Rather, an Immigration Judge must apply the realistic probability test whenever a party asserts that a State's statutory definition of a controlled substance is broader than the Federal definition of a controlled substance based on a textual mismatch regarding the isomers of a particular controlled substance.

## B. Burden of Proof for Realistic Probability Test

"[T]he INA assigns [DHS] the 'burden' of showing that the alien has committed a [removable offense] . . . ." *Pereida v. Wilkinson*, 592 U.S. 224, 232 (2021); *accord* INA § 240(c)(3)(A), 8 U.S.C. § 1229a(c)(3)(A) (2018). Specifically, DHS must prove the "who, what, when, and where of a conviction." *Pereida*, 592 U.S. at 238–39.

The Supreme Court addressed burden allocations in the context of criminal convictions in *Pereida*. *Pereida* dealt with an ambiguous conviction record involving Nebraska's categorically divisible attempted criminal impersonation statute, which included four separate offenses, at least two of which would trigger immigration consequences. *Pereida*, 592 U.S at 235–36. The evidence in the record of Mr. Pereida's conviction was ambiguous as to which crime he was convicted of committing. *Id*. at 229–30, 235–36. Because the case arose in the cancellation of removal context, the Court held that Mr. Pereida had the burden to show that he had been convicted under one of the subsections that would not constitute a disqualifying offense. *Id*. at 236–37.

Crucially, the *Pereida* Court distinguished *Moncrieffe* as addressing "the question whether the minimum conduct needed to commit an alien's *known* offense of conviction categorically triggered adverse federal consequences" and not "the threshold factual question [of] . . . *which* crime formed the basis of the alien's prior conviction." *Id*. at 239. *Pereida* did not overturn the Supreme Court's instruction in *Moncrieffe* that once DHS has proven the existence of a conviction that would render an alien removable, "to defeat the categorical comparison," the burden is on the alien "to demonstrate [a realistic probability] that the State actually prosecutes the relevant offense" in cases involving conduct falling outside the generic Federal definition. *Moncrieffe*, 569 U.S. at 206.

Thus, we conclude that once DHS establishes the existence of a State drug conviction by clear and convincing evidence, a respondent who argues that a State conviction is categorically overbroad based on differing substance or isomer definitions has the burden of demonstrating a realistic probability that the State prosecutes substances falling outside the Federal definition of a controlled substance. *See Moncrieffe*, 569 U.S. at 206; *see also* INA § 240(c)(3)(A), 8 U.S.C. § 1229a(c)(3)(A). The respondent cannot simply point to the State (but not Federal) statutory control of a particular drug isomer to defeat the categorical comparison to the Federal drug schedules. *See United States v. Vega-Ortiz*, 822 F.3d 1031, 1035–36 (9th Cir. 2016) (holding that a defendant claiming that the California definition of methamphetamine was overbroad because the Federal schedule of controlled substances excluded a particular product containing "L-meth" that was not excluded from California's definition would need to show a "realistic probability" of prosecution); *see also Moncrieffe*, 569 U.S. at 206. This approach to the realistic probability test should be applied in any circuit that does not have binding legal authority requiring a contrary interpretation.[2]

---

[2] We acknowledge that in certain circumstances, some circuit courts have determined that a plain or unambiguous textual mismatch between State and Federal controlled substance isomer definitions may end the categorical inquiry without application of the realistic probability test. *See, e.g.*, *United States v. Minter*, 80 F.4th 406, 411–13 (2d. Cir. 2023); *Aguirre-Zuniga v. Garland*, 37 F.4th 446, 451–53 (7th Cir. 2022); *United States v. Myers*, 56 F.4th 595, 599 (8th Cir. 2022). To the extent these decisions are inconsistent with the application of the realistic probability test to the controlled substance statute we now address, they are not binding because this case arises in the Ninth Circuit. *See Matter of Anselmo*, 20 I&N Dec. 25, 31 (BIA 1989) ("Where we disagree with a court's position on a given issue, we decline to follow it outside the court's circuit."). The Ninth Circuit has applied the realistic probability test notwithstanding a statute "textually appear[ing] to criminalize more conduct than the federal one." *Rodriguez-Gamboa*, 972 F.3d at 1152.

Placing the burden on the respondent to establish a realistic probability is especially necessary in isomer cases like this one because, as demonstrated in *Rodriguez-Gamboa*, 972 F.3d at 1152, some States use catch-all definitions of controlled substances that may sweep in theoretical or even scientifically impossible isomers to ensure that all isomers of a controlled substance are covered.[3]  Forcing DHS to scientifically disprove every theoretical formulation of a controlled substance's isomers would clog the immigration courts with "never-ending evidentiary hearings on organic chemistry" and frustrate the promotion of fairness and consistency in the application of the immigration laws to aliens in different states.  *Rodriguez-Gamboa*, 972 F.3d at 1154 n.5; *see also Matter of Navarro Guadarrama*, 27 I&N Dec. at 568.

## C. Application to the Respondent

DHS has shown by clear and convincing evidence that the respondent was convicted of possessing methamphetamine with intent to sell in Arizona. *See* INA § 240(c)(3)(A), 8 U.S.C. 1229a(c)(3)(A).  As discussed above, Arizona defines methamphetamine to include its positional isomers, whereas Federal law only explicitly includes optical isomers.  For the reasons discussed above, this mismatch is insufficient, on its own, to show that the respondent's conviction for methamphetamine is not categorically a violation of a law relating to a controlled substance as defined under Federal law.  *See* INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i); *see also Moncrieffe*, 569 U.S. at 205–06; *Matter of Navarro Guadarrama*, 27 I&N Dec. at 567.  Nowhere in these proceedings has the respondent "demonstrate[d] that the State actually prosecutes the relevant offense in cases involving" positional isomers of methamphetamine that are not federally controlled substances. *Moncrieffe*, 569 U.S. at 206.  On the contrary, DHS has identified at least one positional isomer of methamphetamine, phentermine, that is explicitly controlled under both Arizona and Federal law.  Thus, the apparent textual overbreadth is ambiguous and may even be illusory, reinforcing the need for the realistic probability test to ensure that "aliens in different States face the same consequences for drug-related convictions." *Matter of Navarro Guadarrama*, 27 I&N Dec. at 568.

---

[3]  This is likely due to the shift from plant-based drugs to lab-based "synthetic drugs," which "are responsible for nearly all of the fatal drug overdoses and poisonings in our country . . . [and] have transformed . . . the drug landscape . . . [and] the criminal landscape." Drug Enf't Admin., U.S. Dep't of Just., National Drug Threat Assessment 1 (2024), https://www.dea.gov/sites/default/files/2024-05/5.23.2024 NDTA-updated.pdf.

In our previous decision, we remanded the record for the Immigration Judge to make factual findings concerning the existence of positional isomers of methamphetamine and the related potential of prosecution under Arizona and Federal law. The Immigration Judge invited DHS to file additional evidence or present an expert witness to address the issue, and DHS declined. Thus, the Immigration Judge found that DHS had not met its burden to establish the respondent's removability.

However, neither DHS nor the Immigration Judge bears the burden under the realistic probability test. While DHS bears the ultimate burden to establish removability, INA § 240(c)(3), 8 U.S.C. 1229a(c)(3), "where an alien has been convicted of violating a State drug statute that includes a controlled substance that is [defined more broadly than in] . . . the Federal controlled substances schedules, he or she must establish a realistic probability that the State would actually apply the language of the statute to prosecute conduct involving [a] substance [that is not federally controlled] in order to avoid the immigration consequences of such a conviction." *Matter of Navarro Guadarrama*, 27 I&N Dec. at 567. Further, because DHS has shown that at least one positional isomer of methamphetamine is specifically controlled under both Arizona and Federal law, the extent to which Arizona controls positional isomers of methamphetamine that are not federally controlled is unclear. Thus, to succeed with his positional isomer argument and avoid the immigration consequences of his conviction for possessing methamphetamine for sale, the respondent must establish a realistic probability that Arizona would actually prosecute conduct involving a particular positional isomer of methamphetamine that is not federally controlled. *See id*.

## III. CONCLUSION

Accordingly, we will sustain DHS' appeal and remand the record to the Immigration Judge to provide the respondent an opportunity to establish a realistic probability that Arizona prosecutes conduct involving one or more positional isomers of methamphetamine that are not federally controlled. We reiterate that the apparent textual isomer mismatch between the Arizona and Federal definitions is not, by itself, sufficient to establish the requisite realistic probability. In remanding, we express no opinion regarding the ultimate outcome of these proceedings. *See Matter of D-G-C-*, 28 I&N Dec. 297, 303 (BIA 2021). Given this disposition, we will not reach the parties' other appellate arguments at this time. *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (stating courts and agencies generally do not need to make findings on issues that are unnecessary to the results reached). The

Immigration Judge may take any steps deemed appropriate to comply with our order.

**ORDER:** DHS' appeal is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings and the entry of a new decision consistent with the foregoing opinion.